BEERS LAW OFFICES
THOMAS J. BEERS
P.O. Box 7968
234 E. Pine Street
Missoula, MT 59802
Telephone: 406/728-4888
blo@montana.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
JOY ANN BULL
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)
joyb@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
JEFFREY W. LAWRENCE
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
jeffreyl@rgrdlaw.com

Attorneys for Lead Plaintiff Vogt

## UNITED STATES DISTRICT COURT
### DISTRICT OF MONTANA
### BUTTE DIVISION

| | |
|---|---|
| In re TOUCH AMERICA HOLDINGS, INC. SECURITIES LITIGATION | No. CV-02-0057-BU-SEH |
| This Document Relates To:<br><br>ALL ACTIONS. | CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SECURITIES CLASS ACTION SETTLEMENT AND THE PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS |

# TABLE OF CONTENTS

Page

I.     SUMMARY OF ARGUMENT ..................................................................... 1

II.    THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS
       ACTION SETTLEMENTS ......................................................................... 3

III.   THE SECURITIES SETTLEMENT MEETS THE NINTH CIRCUIT
       STANDARD FOR APPROVAL.................................................................. 5

       A.     The Parties Could Identify the Strengths and Weaknesses of
              Their Cases ..................................................................................... 5

       B.     The Securities Settlement Appropriately Balances the Risks of
              Litigation and the Benefit to the Securities Settlement Class of
              a Certain Recovery ......................................................................... 6

              1.     Continued Litigation Posed Substantial Risks in
                     Establishing Liability .............................................................. 7

              2.     Continued Litigation Posed Substantial Risks in Proving
                     Damages................................................................................. 8

              3.     The Bankruptcy of Touch America and the Likelihood of
                     Recovery On a Litigated Judgment Support Approval of
                     the Securities Settlement........................................................ 11

              4.     Balancing the Certainty of an Immediate Recovery
                     Against the Expense and Likely Duration of Protracted
                     Litigation and Trial Favors Settlement .................................. 12

       C.     The Recommendations of Experienced Counsel Heavily Favor
              Approval of the Securities Settlement.............................................. 14

       D.     Reaction of the Securities Settlement Class Supports Approval
              of the Securities Settlement............................................................. 14

IV.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND
       ADEQUATE AND SHOULD BE APPROVED BY THE COURT ........... 15

V.     CONCLUSION........................................................................................... 17

513604_1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*AUSA Life Ins. Co. v. Ernst & Young,*
   39 Fed. Appx. 667 (2d Cir. 2002) .................................................. 11

*Backman v. Polaroid Corp.,*
   910 F.2d 10 (1st Cir. 1990) ........................................................... 11

*Beecher v. Able,*
   575 F.2d 1010 (2d Cir. 1978) ........................................................ 15

*Behrens v. Wometco Enters., Inc.,*
   118 F.R.D. 534 (S.D. Fla. 1988), *aff'd,*
   899 F.2d 21 (11th Cir. 1990) ........................................................ 10

*Boyd v. Bechtel Corp.,*
   485 F. Supp. 610 (N.D. Cal. 1979) ................................... 5, 6, 12, 15

*Bullock v. Adm'r of Estate of Kircher,*
   84 F.R.D. 1 (D.N.J. 1979) ............................................................. 12

*Chatelain v. Prudential-Bache Sec.,*
   805 F. Supp. 209 (S.D.N.Y. 1992) ............................................. 9, 12

*Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ......................................................... 10

*Dura Pharms., Inc. v. Broudo,*
   544 U.S. 336 (2005) ........................................................................ 9

*Ellis v. Naval Air Rework Facility,*
   87 F.R.D. 15 (N.D. Cal. 1980), *aff'd,*
   661 F.2d 939 (9th Cir. 1981) ................................................... 4, 5, 14

*Ernst & Ernst v. Hochfelder,*
   425 U.S. 185 (1976) ........................................................................ 7

*Fisher Bros. v. Cambridge-Lee Indus., Inc.,*
   630 F. Supp. 482 (E.D. Pa. 1985) ................................................. 14

**Page**

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975) ............................................................. 5, 6, 12

*Hughes v. Microsoft Corp.,*
    No. C98-1646C, 2001 U.S. Dist. LEXIS 5976
    (W.D. Wash. Mar. 26, 2001) ....................................................... 4, 5

*In re "Agent Orange" Prod. Liab. Litig.,*
    611 F. Supp. 1396 (E.D.N.Y. 1985) ............................................. 16

*In re Am. Bank Note Holographics,*
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ......................................... 15

*In re Apple Computer Sec. Litig.,*
    No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608
    (N.D. Cal. Sept. 6, 1991) ............................................................ 11

*In re Chicken Antitrust Litig. Am. Poultry,*
    669 F.2d 228 (5th Cir. 1982) ...................................................... 15

*In re Corrugated Container Antitrust Litig.,*
    643 F.2d 195 (5th Cir. 1981)), *aff'd in part and rev'd in part
    on other grounds,* 818 F.2d 179 (2d Cir. 1987)............................ 16

*In re Ikon Office Solutions, Inc.,*
    194 F.R.D. 166 (E.D. Pa. 2000)................................................. 7, 12

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) ................................................. 5, 6, 16

*In re Mfrs. Life Ins. Co. Premium Litig.,*
    MDL No. 1109, 1998 U.S. Dist. LEXIS 23217
    (S.D. Cal. Dec. 21, 1998)....................................................... 10, 15

*In re Pac. Enters. Sec. Litig.,*
    47 F.3d 373 (9th Cir. 1995) ...................................................... 3, 5

*In re PaineWebber Ltd. P'ships Litig.,*
    171 F.R.D. 104 (S.D.N.Y.), *aff'd,* 117 F.3d 721 (2d Cir. 1997) ................... 5

Page

*In re Silicon Graphics Sec. Litig.,*
    183 F.3d 970 (9th Cir. 1999) ................................................................. 7

*In re Warner Commc'ns Sec. Litig.,*
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd,*
    798 F.2d 35 (2d Cir. 1986) .......................................................*passim*

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
    720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom.*
    *Class Plaintiffs v. Seattle,* 955 F.2d 1268 (9th Cir. 1992)....................... 4, 15

*Lewis v. Newman,*
    59 F.R.D. 525 (S.D.N.Y. 1973) ........................................................... 6

*Malchman v. Davis,*
    761 F.2d 893 (2d Cir. 1985) ............................................................... 5

*Marshall v. Holiday Magic, Inc.,*
    550 F.2d 1173 (9th Cir. 1977) ............................................................ 3

*Milstein v. Huck,*
    600 F. Supp. 254 (E.D.N.Y. 1984) ..................................................... 12

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co.,*
    797 F.2d 799 (9th Cir. 1986) ............................................................. 3

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004)...................................................... 6, 15

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972) .............................................................. 3

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982) .......................................................*passim*

*Petrovic v. AMOCO Oil Co.,*
    200 F.3d 1140 (8th Cir. 1999) ........................................................... 16

*Republic Nat'l Life Ins. Co. v. Beasley,*
    73 F.R.D. 658 (S.D.N.Y. 1977)............................................................ 6

513604_1

**Page**

*Robbins v. Koger Props., Inc.,*
    116 F.3d 1441 (11th Cir. 1997) ...................................................... 11

*S.C. Nat'l Bank v. Stone,*
    749 F. Supp. 1419 (D.S.C. 1990) .................................................. 16

*Sirota v. Solitron Devices, Inc.,*
    673 F.2d 566 (2d Cir. 1982) ........................................................ 9

*Steinberg v. Carey,*
    470 F. Supp. 471 (S.D.N.Y. 1979) .............................................. 3

*Stoetzner v. U.S. Steel Corp.,*
    897 F.2d 115 (3d Cir. 1990) ........................................................ 15

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) ............................................... 4, 11, 12

*TSC Indus. v. Northway, Inc.,*
    426 U.S. 438 (1976) .................................................................. 7

*Util. Reform Project v. Bonneville Power Admin.,*
    869 F.2d 437 (9th Cir. 1989) ...................................................... 3

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) ...................................................... 3

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1982) ................................................. 3, 5, 16

*White v. NFL,*
    822 F. Supp. 1389 (D. Minn. 1993) ............................................ 15

*Williams v. First Nat'l Bank,*
    216 U.S. 582 (1910) .................................................................. 3

*Winkler v. NRD Mining, Ltd.,*
    198 F.R.D. 355 (E.D.N.Y.), *aff'd sub nom.*
    *Winkler v. Wigley,* 242 F.3d 369 (2d Cir. 2000) .......................... 11

- v -

**Page**

*Young v. Katz,*
    447 F.2d 431 (5th Cir. 1971) ........................................................................ 13


## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78j(b) ................................................................................................ 7, 8
    §78u-4 ............................................................................................ 6, 7, 17

Federal Rules of Civil Procedure
    Rule 23 ............................................................................................... 3, 15
    Rule 23(e) ............................................................................................. 2, 3


## SECONDARY AUTHORITIES

*Manual for Complex Litigation* (3d ed. 1995)
    §30.42 ...................................................................................................... 5

513604_1

## I.   SUMMARY OF ARGUMENT

Securities Lead Plaintiff respectfully submits this memorandum of law in support of his motion for final approval of the proposed settlement of the Securities Action for cash consideration of $19,000,000.[1] The compromise reached is the result of extensive arm's-length and mediator-assisted negotiations, and, in Securities Lead Counsel's view, reflects a fair resolution of the parties' respective claims and defenses under the unique circumstances of this case.

The Securities Action began in June 2002, with the filing of seven class action complaints asserting that defendants violated federal securities laws by issuing false and misleading statements during the Securities Settlement Class Period about Touch America Holding, Inc.'s ("Touch America" or the "Company") financial results and future prospects as a telecommunications company.  Securities Lead Plaintiff alleged that defendants' actions resulted in the inflation of the price of The Montana Power Company ("Montana Power") common stock during the Securities Settlement Class Period and that the Securities Settlement Class suffered financial harm.  An overview of Securities Lead Plaintiff's claims and the history of the litigation leading to the Securities Settlement are detailed in the Declaration of Jeffrey W. Lawrence in Support of Motion for (1) Final Approval of Securities Class Action Settlement; (2) Approval of Plan of Allocation of Settlement Proceeds; and (3) An Award of Attorneys' Fees and Expenses ("Lawrence Declaration"), filed herewith.  The Court is respectfully referred to the Lawrence Declaration for a discussion of the factual and procedural history of the Securities Action.

---

[1]    All capitalized terms not defined herein have the meanings ascribed to them in the Touch America Securities Stipulation of Settlement dated as of November 13, 2009 and the Amendment to Touch America Securities Stipulation of Settlement dated December 4, 2009 (together, the "Securities Settlement").

Pursuant to an order of the Court filed February 10, 2010, the Notice of Pendency and Proposed Settlement of Touch America Securities Action (the "Notice") was mailed to over 52,000 potential Securities Settlement Class Members beginning on March 22, 2010. In addition, a summary notice was published once in *Investor's Business Daily* on March 18, 2010 and twice in the *Montana Standard*, *Bozeman Daily Chronicle*, *Daily Inter Lake*, *Great Falls Tribune*, *Billings Gazette*, *Helena Independent*, *Missoulian*, and *The Hamilton Ravalli Republic* on March 18, and 25, 2010.[2] The last day to file objections to any aspect of the settlement will be April 30, 2010. As of the date of this filing, Securities Lead Counsel is not aware of any objections to the Securities Settlement or to the Plan of Allocation. If any objections are received, they will be addressed by Securities Lead Counsel in a reply brief.

Federal Rule of Civil Procedure 23(e) requires the settlement to be fair, adequate, and reasonable. The factors utilized in this Circuit to determine the fairness of a class action settlement are set forth in *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), and are discussed in detail below. In sum, Securities Lead Counsel firmly believes that the Securities Settlement is fair, reasonable, and adequate based on pre-filing and subsequent investigations, interviews with potential witnesses, the ability to collect a recovery from the Individual Securities Defendant, the amount obtained in settlement versus the risk of obtaining a larger judgment at trial, the certainty of a recovery versus the risk of no recovery after a trial, past experience in other class actions, and the serious disputes between the

---

[2]     *See* paragraphs 3 through 13 of the Declaration of Carole K. Sylvester Re A) Mailing of the Montana Power Settlements Cover Letter; B) Mailing of the Notice of Pendency and Proposed Settlement of Touch America Securities Action; C) Notice of the Montana Power Class Action Settlement; D) The Proof of Claim and Release Form; and E) Publication of the Published Notice, filed herewith.

parties concerning damages and liability. Thus, Securities Lead Counsel recommends that the Securities Settlement be approved by this Court.[3]

## II.   THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice*, 688 F.2d at 625. Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).[4]

In approving a proposed settlement of a class action under Federal Rule of Civil Procedure 23(e), the court must find that the proposed settlement is "fair, adequate and reasonable."[5] The Ninth Circuit has provided a list of factors that may be considered in evaluating the fairness of a class action settlement:

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or

---

[3]   In reviewing this settlement under Rule 23, the Court is not required to substitute its business judgment for that of these counsel, *Steinberg v. Carey*, 470 F. Supp. 471 (S.D.N.Y. 1979); the settlement should be approved if it is within a "range of reasonableness," *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

[4]   The law always favors the compromise of disputed claims, *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986); including those asserted in stockholder class actions, *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

[5]   *Pac. Enters.*, 47 F.3d at 377; *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625 (citations omitted). *Accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992).

The district court must exercise "sound discretion" in approving a settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375. However, a strong initial presumption of fairness attaches to the proposed settlement if the settlement is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at *21 (W.D. Wash. Mar. 26, 2001). Therefore, in exercising its discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. In addition, the Ninth Circuit defines the limits of the inquiry to be made by the Court in the following manner:

Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.

- 4 -

*Id.* (emphasis in original).  As explained below and in the Lawrence Declaration, application of these criteria shows that the Securities Settlement warrants the Court's approval.

Moreover, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).  The presumption of reasonableness in this action is fully warranted because the Securities Settlement is the product of extensive arm's-length negotiations with the substantial assistance of two mediators. *Hughes*, 2001 U.S. Dist. LEXIS 5976, at *17 (citing *Pac. Enters.*, 47 F.3d at 378) (finding mediator's involvement supports settlement approval).  Finally, it is the considered judgment of counsel for the parties that the Securities Settlement is a fair, reasonable, and adequate resolution of the litigation. *See Hughes*, 2001 U.S. Dist. LEXIS 5976, at *20-*21; *Manual for Complex Litigation* §30.42 (3d ed. 1995).[6]

## III.  THE SECURITIES SETTLEMENT MEETS THE NINTH CIRCUIT STANDARD FOR APPROVAL

### A.  The Parties Could Identify the Strengths and Weaknesses of Their Cases

The stage of the proceedings and the amount of discovery completed is one of the factors that courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see also Weinberger*, 698 F.2d at 74; *Ellis*, 87 F.R.D. at 18; *Boyd*, 485 F. Supp. at 616-17.

Securities Lead Counsel conducted an informal investigation, including interviewing potential witnesses, working with consultants, and researching the law

---

[6]     *Accord Malchman v. Davis*, 761 F.2d 893, 903 (2d Cir. 1985); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

regarding the claims and defenses asserted. The parties also participated in mediation sessions with Antonio C. Piazza in 2004 and last year with the Honorable Daniel J. Weinstein (Ret.), where each side's claims and defenses were thoroughly explored. As a result, Securities Lead Counsel has a comprehensive understanding of the strengths and weaknesses of the case and has sufficient information to make an informed decision regarding the fairness of the Securities Settlement before presenting it to the Court. *See Mego Fin.*, 213 F.3d at 459 (finding parties could identify strengths and weaknesses of claims without formal discovery).

**B.     The Securities Settlement Appropriately Balances the Risks of Litigation and the Benefit to the Securities Settlement Class of a Certain Recovery**

To determine whether the Securities Settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation against the benefits afforded to Securities Settlement Class Members and the immediacy and certainty of a substantial recovery. *Mego Fin.*, 213 F.3d at 458; *Girsh*, 521 F.2d at 157; *Boyd*, 485 F. Supp. at 616-17; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). In other words, "'[t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "[i]t has been held proper to take the bird in hand instead of a prospective flock in the bush."'" *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citations omitted).

In the context of approving class action settlements, courts attempting to balance these factors have recognized "that stockholder litigation is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *see also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658 (S.D.N.Y. 1977). This is even more so today, in this post-Private Securities Litigation Reform Act of 1995 ("PSLRA") environment, amid defendants' constant attempts to push the envelope

and contours of the PSLRA. *See In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"). In particular, the Ninth Circuit's decisions in *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999) and its progeny have interpreted the PSLRA's heightened pleading standards in an expansive manner and have established what is commonly accepted to be the most stringent standards of any circuit to pleading a successful securities claim under §10(b) of the Securities Exchange Act of 1934.

Here, a balance of these factors weighs heavily in support of approval of the Securities Settlement and unquestionably outweighs another distinct possibility – no recovery for the Securities Settlement Class.

### 1. Continued Litigation Posed Substantial Risks in Establishing Liability

In order to prevail on the §10(b) claims at trial, the Securities Lead Plaintiff would have had the burden of establishing the liability of the Individual Securities Defendant to the satisfaction of the jury and the Court. Securities Lead Plaintiff would have had to prove, *inter alia*, that the alleged misstatements were material, *TSC Indus. v. Northway, Inc.*, 426 U.S. 438 (1976), and made with scienter (actual knowledge or reckless disregard for the truth), *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976). Accordingly, in order to prevail on the §10(b) claims, the Securities Lead Plaintiff would have had to prove that the Individual Securities Defendant participated in the public dissemination of misleading information, that the information was material to investors in determining whether to purchase Montana Power common stock, that the information materially affected the price of Montana Power common stock, and that the Individual Securities Defendant withheld information either with actual intent to deceive, manipulate, or defraud, or that he recklessly disregarded these facts and their consequences.

Here, there was a significant risk that the Court would dismiss the §10(b) claims for failure to adequately plead loss causation and/or scienter. In fact, counsel for the Individual Securities Defendant have consistently maintained that the Securities Lead Plaintiff would not be able to adequately establish either loss causation or scienter. However, if the §10(b) claims were upheld, a class was certified and survived summary judgment, the risks of establishing liability posed by the conflicting testimony and evidence at trial would be exacerbated by the unpredictability of a lengthy and complex jury trial; the risk that the jury would find that the asserted misrepresentations were not material; and the risk that the jury would find that the Individual Securities Defendant reasonably believed in the appropriateness of his actions at the time and that the Securities Lead Plaintiff failed to prove that the Individual Securities Defendant acted with the requisite scienter. Securities Lead Plaintiff's burden to prove scienter at trial cannot be underestimated. Proof of scienter for a defendant is complex and involves exploration of the individual's state of mind. Securities Lead Plaintiff would need to prove what the Individual Securities Defendant knew about the alleged wrongdoing and at what point in time he had or should have had such knowledge.

Although the Securities Lead Plaintiff believes his securities claims are meritorious and fully supported by the evidence obtained to date, further litigation to establish liability posed a potential threat to any recovery.

### 2.      Continued Litigation Posed Substantial Risks in Proving Damages

Securities Lead Counsel is mindful that if he were able to overcome the obstacles to establishing liability at trial, he would still face the additional risks of proving loss causation and damages. Securities Lead Counsel believes that if he continued to trial he would be able to establish damages greater than the settlement

amount. However, this assumes that the Securities Lead Plaintiff would prevail on the damage issues presented in this case.

Expert testimony is necessary in order to fix the amount – and indeed the existence – of actual damages. *See, e.g., Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 576-78 (2d Cir. 1982). Such an expert evaluation is based not only on stock price history but on other more elusive factors, including corporate asset value, cash flow, income and growth prospects for the future, industry and economic trends, the quality of management, the nature and amount of liabilities, and many other variables. At trial, the Securities Lead Plaintiff would likely have faced a motion *in limine* to preclude his damage expert's testimony under the *Daubert* test and risked a decision that the expert's valuation model might not be admissible in evidence.

If the Securities Lead Plaintiff survived the *Daubert* motion, the loss causation analysis and damage valuations of Securities Lead Plaintiff's and the Individual Securities Defendant's experts would vary substantially. The United States Supreme Court has confirmed that the law requires that "a plaintiff prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). At trial, the Individual Securities Defendant's experts would likely contend that all of the losses experienced by the Securities Settlement Class were due to factors completely unrelated to any alleged misconduct of the Individual Securities Defendant, thereby eliminating any recovery by the Securities Settlement Class.

In the "battle of experts," it is impossible to predict with any certainty which arguments would find favor with the jury. *See Warner Commc'ns*, 618 F. Supp. at 744-45 (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions"); *see also Chatelain v. Prudential-Bache Sec.*, 805

513604_1

F. Supp. 209, 214 (S.D.N.Y. 1992); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Thus, even if the Securities Settlement Class prevailed in establishing liability, significant additional risks would remain in establishing the existence of damages.

While the Securities Lead Plaintiff contends that the aggregate damages that would be established at trial could be as high as $185 million, such result assumes that *all significant liability and damage issues would have been resolved in favor of the Securities Settlement Class*. Setting aside the possibility that actual provable damages could ultimately have been a small fraction of Securities Lead Plaintiff's preliminary damage analysis, courts routinely approve settlements providing recoveries representing a small percentage of the potential recovery. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628 (emphasis in original). The Second Circuit also observed:

> The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.
>
> \* \* \*
>
> *In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.*

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2d Cir. 1974) (emphasis added).

In summary, although Securities Lead Counsel believes that the case is meritorious, his experience has taught him how the risks discussed above can render the outcome of a trial extremely uncertain. *See In re Mfrs. Life Ins. Co. Premium Litig.*, MDL No. 1109, 1998 U.S. Dist. LEXIS 23217, at \*17 (S.D. Cal. Dec. 21, 1998) ("even if it is assumed that a successful outcome for plaintiffs at summary judgment or at trial would yield a greater recovery than the Settlement – which is not at all apparent – there is easily enough uncertainty in the mix to support settling the

dispute rather than risking no recovery in future proceedings"). Moreover, even if the Securities Lead Plaintiff was to prevail at trial, risks to the Securities Settlement Class remain. For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991), a case litigated and tried in the Northern District of California, the jury rendered a verdict for plaintiffs after an extended trial. Based upon the jury's findings, recoverable damages would have exceeded $100 million. However, the court overturned the verdict, entering judgment n.o.v. for the individual defendants, and ordered a new trial with respect to the corporate defendant. In another case, the class won a jury verdict and a motion for j.n.o.v. was denied, but on appeal the judgment was reversed and the case dismissed. *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990). *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing on appeal $81 million jury verdict and dismissing securities action with prejudice); *AUSA Life Ins. Co. v. Ernst & Young*, 39 Fed. Appx. 667 (2d Cir. 2002) (affirming district court's dismissal after a full bench trial and earlier appeal and remand); *Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y.) (granting defendants' motion for judgment as a matter of law after jury verdict for plaintiffs), *aff'd sub nom. Winkler v. Wigley*, 242 F.3d 369 (2d Cir. 2000). Therefore, careful consideration of the above risks supports approval of the Securities Settlement as fair, adequate, and reasonable.

**3.   The Bankruptcy of Touch America and the Likelihood of Recovery On a Litigated Judgment Support Approval of the Securities Settlement**

A defendant's ability to pay and a plaintiff's ability to collect a higher recovery through trial must be considered when determining whether a settlement is adequate. The Ninth Circuit affirmed a district court's decision to approve a class action settlement where the financial condition of the defendants and their ability to respond to a large judgment was uncertain. *See Torrisi*, 8 F.3d at 1376. In *Torrisi*, the Ninth Circuit found that this fact "predominates" over all others in favor of the settlement

because the corporation's financial condition was impaired at the time the settlement was negotiated. *Id.* Other courts have held that uncertainty with regard to the defendants' financial condition and plaintiff's ability to collect a judgment strongly supports approval of a proposed settlement. *See, e.g., Ikon*, 194 F.R.D. at 183 (defendants' inability to pay a greater sum supports approval of settlement); *Chatelain*, 805 F. Supp. at 214 (stating that the defendants' lack of significant assets and insurance coverage made collection of a judgment uncertain and was "a significant factor in approving the settlement").

Here, there is a significant risk that, absent this settlement, the Securities Lead Plaintiff would not be able to collect any sizeable judgment he obtained for the Securities Settlement Class against the Individual Securities Defendant. The Individual Securities Defendant does not have sufficient assets to cover any sizeable plaintiff's judgment. Therefore, the only viable source of recovery from the Individual Securities Defendant is his directors' and officers' insurance. Continuing defense costs would deplete this insurance and had the case continued, all insurance proceeds would have likely been used to pay defense costs. Consequently, if the Securities Lead Plaintiff had continued to litigate and was able to obtain a large judgment, he might not have been able to collect it. Under these circumstances, the Securities Settlement is eminently reasonable.

### 4.  Balancing the Certainty of an Immediate Recovery Against the Expense and Likely Duration of Protracted Litigation and Trial Favors Settlement

The immediacy and certainty of a recovery is a factor for the Court to balance in determining whether the proposed settlement is fair, adequate, and reasonable. *E.g., Girsh*, 521 F.2d at 157. Courts consistently have held that "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *Officers for Justice*, 688 F.2d at 626; *Boyd*, 485 F. Supp. at 616-17; *Bullock v.*

*Adm'r of Estate of Kircher*, 84 F.R.D. 1, 10 (D.N.J. 1979). Therefore, the benefit of the Securities Settlement must also be balanced against the expense of achieving a more favorable result at trial. *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971).

Approval of the Securities Settlement will mean a present recovery for eligible claimants. If not for this settlement, the case would have continued with a motion to dismiss, class certification, discovery, summary judgment, trial, and likely appeal. A trial would have occupied a number of attorneys for many weeks and would have required substantial and costly expert testimony on both sides. Moreover, a judgment favorable to the Securities Settlement Class, in light of the contested nature of virtually every aspect of this case, would unquestionably be the subject of post-trial motions and further appeals, which could prolong the case for several more years. *See, e.g., Warner Commc'ns*, 618 F. Supp. at 745 (delay from appeals is a factor to be considered). Therefore, delay, not just at the trial stage, but through post-trial motions and the appellate process as well, could force Securities Settlement Class Members to wait many more years for any recovery, further reducing its value. Accordingly, settlement of the Securities Action will ensure a recovery, and eliminate the risk of no recovery at all.[7]

As the Ninth Circuit has made clear, the very essence of a settlement agreement is compromise, "'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citation omitted).

> "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation. . . ."

---

[7]   As the Court is aware, all conditions for the effectiveness of the settlements covered by the Master Settlement Agreement must be fulfilled before Members of the Securities Settlement Class will receive a recovery.

*Id.* (citation omitted); *Ellis*, 87 F.R.D. at 19 (as a *quid pro quo* for not having to undergo the uncertainties and expenses of litigation, the plaintiffs must be willing to moderate the measure of their demands). Accordingly, the fact that the Securities Settlement Class potentially could have achieved a greater recovery after trial does not preclude the Court from finding that the Securities Settlement is within a "range of reasonableness" that is appropriate for approval. *E.g.*, *Warner Commc'ns*, 618 F. Supp. at 745.

Thus, for the reasons set forth above, the Securities Settlement is in the best interest of the Securities Settlement Class.

### C.   The Recommendations of Experienced Counsel Heavily Favor Approval of the Securities Settlement

Experienced counsel, negotiating at arm's length, have weighed the factors discussed above and endorse the Securities Settlement. As courts have stated, the view of the attorneys actively conducting the litigation, while not conclusive, "is entitled to significant weight." *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight").

The Securities Action has been litigated and settled by experienced and competent counsel on both sides of the case. Securities Lead Counsel and defense counsel are known for their experience and success in complex and class action litigation. When qualified and well-informed counsel endorse a settlement as being fair, reasonable, and adequate, such recommendation heavily favors this Court's approval of the Securities Settlement.

### D.   Reaction of the Securities Settlement Class Supports Approval of the Securities Settlement

Notices of the Securities Settlement were sent to over 52,000 potential Securities Settlement Class Members and a published notice was published in

*Investor's Business Daily* on March 18, 2010 and in eight Montana newspapers on March 18, and 25, 2010. The time period for objecting to the Securities Settlement will expire on April 30, 2010. To date, no objections to the Securities Settlement have been received.

Moreover, in the event objections are received, courts routinely approve settlements if they otherwise meet the fairness requirements. *See, e.g., Mfrs. Life*, 1998 U.S. Dist. LEXIS 23217, at *24 ("[A] minuscule number of objectors is another factor favoring approval."); *Boyd*, 485 F. Supp. at 624 (adequacy of settlement "persuasive" when 16% of class objected); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (fact only 10% of class objected "strongly favors settlement"); *Nat'l Rural*, 221 F.R.D. at 529 (absence of large number of objections raises a strong presumption settlement is fair to class).

## IV.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of the Federal Rules of Civil Procedure is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable, and adequate. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992). An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *White v. NFL*, 822 F. Supp. 1389, 1420-24 (D. Minn. 1993); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001).

District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). Numerous courts have approved distribution plans that allocate the settlement

proceeds according to the relative strengths and weaknesses of the various claims. *See Warner Commc'ns*, 618 F. Supp. at 745; *Weinberger*, 698 F.2d at 78. Thus, "if one set of claims had a greater likelihood of ultimate success than another set of claims, it is appropriate to weigh 'distribution of the settlement . . . in favor of plaintiffs whose claims comprise the set' that was more likely to succeed." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1411 (E.D.N.Y. 1985) (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 220 (5th Cir. 1981)), *aff'd in part and rev'd in part on other grounds*, 818 F.2d 179 (2d Cir. 1987). Moreover, there is no requirement that a settlement must benefit all class members equally. *See Mego Fin.*, 213 F.3d at 461; *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (upholding distribution plan where class members received different levels of compensation and finding that no subgroup was treated unfairly); *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1437 (D.S.C. 1990) (approving settlement where some class members did not share in recovery).

The decisions cited above acknowledge that the goal of a distribution plan is fairness to the class as a whole, taking into consideration the strength of claims based on available evidence. In order to develop a fair distribution plan, Securities Lead Counsel, in conjunction with a damages consultant, drafted a Plan of Allocation that will result in a fair distribution of the available settlement proceeds. Securities Lead Counsel discussed his theories of liability and damages with a damages consultant, who used this information along with available economic evidence to develop the plan currently before the Court for approval.

The Plan of Allocation is based on three stock price drops during the Securities Settlement Class Period: August 1, 2001 (the price decline following the release of the Company's 2nd quarter financial results); November 1, 2001 (the price decline following a press release announcing a delay in posting the 3rd quarter financial results); and November 15, 2001 (the price decline following the release of the

Company's 3rd quarter financial results and the announcement it was not in compliance with certain of its financial covenants based on its 3rd quarter losses).

By way of example, calculation of a claimant's recovery under the Securities Lead Plaintiff's theory of the case and the Plan of Allocation would be as follows. If Montana Power common stock was purchased between January 30, 2001 and July 31, 2001 and sold before the August 1, 2001 price decline, both the purchase and the sale were at arguably inflated prices and, while it is possible the transaction resulted in a market loss, there is no compensable loss under the securities laws or this Plan of Allocation. On the other hand, if Montana Power common stock was purchased between January 30, 2001 and July 31, 2001 and sold between August 15, 2001 and October 31, 2001, there is a compensable loss calculated as the lesser of the $2.09 (the August 1, 2001 stock price decline) or the difference between the purchase price and the sales price. Further, if the stock purchased was held after November 14, 2001, compensation will be the lesser of $3.44 (the total of the three price declines) or the difference between the purchase price and the sales price or the difference between the purchase price and the closing price on the date of sale. Finally, if the purchased stock was held after the PSLRA's 90-day look back period ending on February 12, 2002, the allowable compensation will be the lesser of $3.44 or the difference between the purchase price and $5.01.

Securities Lead Counsel maintains that the Plan of Allocation will equitably apportion the net settlement proceeds among all eligible Securities Settlement Class Members using the principles set forth in the case law cited above and should be approved.

## V.   CONCLUSION

The Securities Settlement is fair, given the presence of skilled counsel for all parties, the complexity of the facts at issue, the bankruptcy of Touch America, further substantial expense if the Securities Action were to continue to trial, the risks

- 17 -

attendant to prevailing on motions to dismiss, class certification and summary judgment, at trial, and on subsequent appeals, the present benefit of the Securities Settlement to Securities Settlement Class Members, and the extensive mediator-assisted and arm's-length settlement negotiations.   Therefore, for the reasons discussed herein and in the Lawrence Declaration, Securities Lead Plaintiff respectfully requests the Court to approve the settlement of the Securities Action and the Plan of Allocation as fair, reasonable, and adequate.

DATED:  April 6, 2010                     Respectfully submitted,

ROBBINS GELLER RUDMAN
   & DOWD LLP
JOY ANN BULL


_____s/ Joy Ann Bull_____
JOY ANN BULL

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
JEFFREY W. LAWRENCE
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

BEERS LAW OFFICES
THOMAS J. BEERS


_____s/ Thomas J. Beers_____
THOMAS J. BEERS

P.O. Box 7968
234 E. Pine Street
Missoula, MT  59802
Telephone:  406/728-4888
406/728-8445 (fax)

Attorneys for Lead Plaintiff Vogt

- 18 -

## CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum complies with Local Rule 7.1(d)(2), as it contains 5,705 words prepared using Microsoft Office Word 2003, which is less than the 6,500 word limitation.

DATED:  April 6, 2010

s/ Joy Ann Bull
_____
JOY ANN BULL

513627_1

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 6, 2010.

 s/ Joy Ann Bull
JOY ANN BULL

ROBBINS GELLER RUDMAN
      & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:      joyb@rgrdlaw.com

513604_1

# Mailing Information for a Case 2:02-cv-00057-SEH

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Thomas J. Beers**
  blo@montana.com,layneblo@montana.com

- **Alan F. Blakley**
  mjones@montana.com

- **Joy Ann Bull**
  joyb@csgrr.com

- **James E. Burns , Jr**
  jburns@orrick.com

- **Patrick T. Fleming**
  ptf_folaw@qwest.net

- **Robert F. James**
  rfj@uazh.com,rkj@uazh.com,sjw@uazh.com

- **Stephen M. Knaster**
  sknaster@orrick.com

- **Jeffrey W. Lawrence**
  JeffreyL@csgrr.com,jdecena@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Sander Bak
MILBANK TWEED HADLEY & McCLOY
One Chase Manhattan Plaza
New York, NY 10005-1413

Rolin P. Bissell
YOUNG CONAWAY STARGATT & TAYLOR
PO Box 391
Wilmington, DE 19899-0391

Scott Edelman
MILBANK TWEED HADLEY & McCLOY
One Chase Manhattan Plaza
New York, NY 10005-1413

Lori G. Feldman
```

MILBERG WEISS BERSHAD & SCHULMAN
1001 Fourth Ave
Suite 2550
Seattle, WA 98154

**Danielle Gibbs**
YOUNG CONAWAY STARGATT & TAYLOR
PO Box 391
Wilmington, DE 19899-0391

**Jeffrey M. Haber**
BERNSTEIN LIEBHARD & LIFSHITZ
10 East 40th Street
New York, NY 10016

**Maria V. Morris**
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS
100 Pine Street
Suite 2600
San Francisco, CA 94111

**Samuel H. Rudman**
MILBERG WEISS BERSHAD & SCHULMAN
One Pennsylvania Plaza
49th Floor
New York, NY 10119

**Steven G. Schulman**
MILBERG WEISS BERSHAD & SCHULMAN
One Pennsylvania Plaza
49th Floor
New York, NY 10119

**Joseph R. Seidman**                                        **, Jr**
BERNSTEIN LIEBHARD & LIFSHITZ
10 East 40th Street
New York, NY 10016