BEERS LAW OFFICES
THOMAS J. BEERS
P.O. Box 7968
234 E. Pine Street
Missoula, MT 59802
Telephone: 406/728-4888
blo@montana.com

ROBBINS GELLER RUDMAN
 & DOWD LLP
JOY ANN BULL
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)
joyb@rgrdlaw.com

ROBBINS GELLER RUDMAN
 & DOWD LLP
JEFFREY W. LAWRENCE
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
jeffreyl@rgrdlaw.com

Attorneys for Lead Plaintiff Vogt

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| In re TOUCH AMERICA HOLDINGS, INC. SECURITIES LITIGATION | No. CV-02-0057-BU-SEH |
| | CLASS ACTION |
| This Document Relates To: | MEMORANDUM OF LAW IN SUPPORT OF SECURITIES LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES |
| ALL ACTIONS. | |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................... 1

II. FACTUAL AND PROCEDURAL HISTORY OF THE SECURITIES ACTION ........................................................................... 2

III. AWARD OF ATTORNEYS' FEES.......................................... 2

    A. The Legal Standards Governing the Award of Attorneys' Fees in Common Fund Cases Support the Requested Award ...................... 2

        1. A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases ............................................ 2

        2. A Fee of Approximately 16% of the Fund Created Is Very Reasonable ...................................................... 5

    B. Consideration of the Relevant Factors Used by Courts in the Ninth Circuit Justifies the Requested Fee .................... 6

        1. The Result Achieved................................................. 6

        2. The Risks of Litigation............................................. 7

        3. The Skill Required and the Quality of the Work ....... 8

        4. The Novelty and Difficulty of the Questions Presented ........... 9

        5. The Contingent Nature of the Fee and the Financial Burden Carried by Securities Lead Counsel............ 10

        6. The Fee Requested Is Below the Average Fee Awarded in Similar Complex Class Action Litigation............ 11

        7. The Customary Fee ................................................. 12

        8. Reaction of the Securities Settlement Class Supports Approval of the Attorneys' Fee Requested............... 13

IV. THE REQUESTED FEE IS REASONABLE UNDER A LODESTAR CROSS-CHECK.................................................... 14

V. COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED .......................................................................... 16

VI. CONCLUSION...................................................................... 17

513627_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abrams v. Lightolier Inc.,*
    50 F.3d 1204 (3d Cir. 1995) ........................................................ 16

*Arenson v. Bd. of Trade,*
    372 F. Supp. 1349 (N.D. Ill. 1974) ............................................. 9

*Behrens v. Wometco Enters., Inc.,*
    118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21
    (11th Cir. 1990) ....................................................................... 6

*Blum v. Stenson,*
    465 U.S. 886 (1984) ............................................................. 3, 13

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42,*
    8 F.3d 722 (10th Cir. 1993) ...................................................... 16

*Brewer v. S. Union Co.,*
    607 F. Supp. 1511 (D. Colo. 1984) ............................................ 15

*Camden I Condo. Ass'n v. Dunkle,*
    946 F.2d 768 (11th Cir. 1991) .................................................... 4

*Cent. R.R. & Banking Co. v. Pettus,*
    113 U.S. 116 (1885) ................................................................... 3

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005) ................................................................... 9

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    741 F. Supp. 84 (S.D.N.Y. 1990) ............................................. 17

*Goldstein v. MCI WorldCom,*
    340 F.3d 238 (5th Cir. 2003) ...................................................... 9

*Gottlieb v. Barry,*
    43 F.3d 474 (10th Cir. 1994) .................................................. 4, 17

Page

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991) ........................................................ 4

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ........................................................ 16

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).............................................................. 6, 14

*In re Aetna Inc. Sec. Litig.*,
    No. MDL 1219, 2001 U.S. Dist. LEXIS 68
    (E.D. Pa. Jan. 4, 2001) ........................................................ 15

*In re Buspirone Antitrust Litig.*,
    No. MDL 1413 (JGK), 2003 U.S. Dist. LEXIS 26538
    (S.D.N.Y. Apr. 17, 2003)........................................................ 15

*In re Cenco, Inc. Sec. Litig.*,
    519 F. Supp. 322 (N.D. Ill. 1981)................................................ 16

*In re Charter Commc'ns, Inc., Sec. Litig.*,
    No. MDL 1506, 2005 U.S. Dist. LEXIS 14772
    (E.D. Mo. June 30, 2005)........................................................ 15

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ............................................ 4, 12, 17

*In re Equity Funding Corp. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) ............................................ 9

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
    No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627
    (C.D. Cal. June 10, 2005) .................................................. 7, 8, 12

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)............................................. 8, 9, 13

*In re King Res. Co. Sec. Litig.*,
    420 F. Supp. 610 (D. Colo. 1976)............................................ 7, 9

- iii -

**Page**

*In re McDonnell Douglas Equip. Leasing Sec. Litig.*,
    842 F. Supp. 733 (S.D.N.Y. 1994) ................................................ 17

*In re Media Vision Tech. Sec. Litig.*,
    913 F. Supp. 1362 (N.D. Cal. 1996) ...................................... 16, 17

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ............................................... 12, 14

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
    No. 888, 1994 WL 202394 (E.D. La. May 18, 1994)................................ 10

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ................................................ 14, 15

*In re RJR Nabisco, Inc. Sec. Litig.*,
    No. MDL 818 (MBM), 1992 U.S. Dist. LEXIS 12702
    (S.D.N.Y. Aug. 24, 1992)....................................................... 15

*In re Shell Oil Refinery*,
    155 F.R.D. 552 (E.D. La. 1993) ................................................ 15

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999) ............................................ 15

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) .................................................. 12

*In re Synthroid Mktg. Litig.*,
    325 F.3d 974 (7th Cir. 2003) .................................................. 12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ......................................... 3, 6, 7, 10

*In re Xcel Energy, Inc.*,
    364 F. Supp. 2d 980 (D. Minn. 2005)........................................... 15

*J.N. Futia Co. v. Phelps Dodge Indus., Inc.*,
    No. 78 Civ. 4547, 1982 U.S. Dist. LEXIS 15261
    (S.D.N.Y. Sept. 17, 1982)....................................................... 9

513627_1

**Page**

*Keith v. Volpe,*
    501 F. Supp. 403 (C.D. Cal. 1980) ................................................................ 15

*Kirchoff v. Flynn,*
    786 F.2d 320 (7th Cir. 1986) ...................................................................... 4

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.,*
    540 F.2d 102 (3d Cir. 1976) ...................................................................... 7

*Marshall v. Holiday Magic, Inc.,*
    550 F.2d 1173 (9th Cir. 1977) .................................................................. 14

*Miltland Raleigh-Durham v. Myers,*
    840 F. Supp. 235 (S.D.N.Y. 1993) ........................................................... 16

*Mun. Auth. of Bloomsburg v. Pennsylvania,*
    527 F. Supp. 982 (M.D. Pa. 1981) ........................................................... 15

*Paul, Johnson, Alston & Hunt v. Graulty,*
    886 F.2d 268 (9th Cir. 1989) ............................................................. 3, 4, 5

*Powers v. Eichen,*
    229 F.3d 1249 (9th Cir. 2000) .................................................................. 5

*Rabin v. Concord Assets Group,*
    No. 89 CIV 6130 (LBS), 1991 U.S. Dist. LEXIS 18273
    (S.D.N.Y. Dec. 19, 1991) ........................................................................ 15

*Roberts v. Texaco, Inc.,*
    979 F. Supp. 185 (S.D.N.Y. 1997) ........................................................... 15

*Six Mexican Workers v. Ariz. Citrus Growers,*
    904 F.2d 1301 (9th Cir. 1990) .................................................................. 3

*Swedish Hosp. Corp. v. Shalala,*
    1 F.3d 1261 (D.C. Cir. 1993) ................................................................... 3

*Thornberry v. Delta Air Lines,*
    676 F.2d 1240 (9th Cir. 1982), *vacated on other grounds,*
    461 U.S. 952 (1983) ................................................................................ 17

513627_1

*Page*

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) ...................................................... 3, 5, 12

*Trustees v. Greenough,*
    105 U.S. 527 (1882) ............................................................................. 3

*Vincent v. Hughes Air W., Inc.,*
    557 F.2d 759 (9th Cir. 1977) ............................................................. 3

*Vizcaino v. Microsoft Corp.,*
    142 F. Supp. 2d 1299 (W.D. Wash. 2001) ..................................... 9

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ...............................................*passim*

*Weiss v. Mercedes-Benz of N. Am.,*
    899 F. Supp. 1297 (D.N.J. 1995) ................................................... 15

*Winkler v. NRD Mining, Ltd.,*
    198 F.R.D. 355 (E.D.N.Y.), *aff'd sub nom.*
    *Winkler v. Wigley,* 242 F.3d 369 (2d Cir. 2000) .......................... 11

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78u-4 ..................................................................................*passim*
    §78u-4(a)(6) ............................................................................... 5

17 C.F.R.
    §240.10b-5 ................................................................................... 7

**Page**

## SECONDARY AUTHORITIES

1 Alba Conte, *Attorney Fee Awards* (2d ed. 1993)
§1.09.................................................................................................. 13

Charles Silver, *CLASS ACTIONS IN THE GULF SOUTH SYMPOSIUM:*
*Due Process and the Lodestar Method: You Can't*
*Get There from Here* (June 2000)
74 Tul. L. Rev. 1809 ................................................................. 5

Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C.
Dunbar, *Recent Trends IV: What Explains Filings and Settlements in*
*Shareholder Class Actions?* (NERA Nov. 1996) ................................. 12

Richard Posner, *Economic Analysis of Law* (3d ed. 1986)
§21.9................................................................................................. 10

Ronald I. Miller, Ph.D., Todd Foster, Elaine Buckberg, Ph.D.,
*Recent Trends in Shareholder Class Action Litigation: Beyond the*
*Mega-Settlements, is Stabilization Ahead?* (NERA Apr. 2006)............................... 8

Stephanie Plancich, Ph.D., Svetlana Starykh, *2008 Trends in*
*Securities Class Actions* (NERA Dec. 2008)........................................... 7

Thomas E. Willging, Laural L. Hooper & Robert J. Niemic,
*Empirical Study of Class Actions in Four Federal District Courts:*
*Final Report to the Advisory Committee on Civil Rules*
(Federal Judicial Center 1996)............................................................ 12

## I.    INTRODUCTION

Securities Lead Counsel negotiated a settlement consisting of $19,000,000 in cash.[1] For their efforts in achieving this result, counsel for Securities Lead Plaintiff seek a fee of $3,000,000, which is approximately 16% of the TA Securities Settlement Fund, plus payment of $349,076.74 in expenses.

The Declaration of Jeffrey W. Lawrence in Support of Motion for (1) Final Approval of Securities Class Action Settlement; (2) Approval of Plan of Allocation of Settlement Proceeds; and (3) an Award of Attorneys' Fees and Expenses ("Lawrence Declaration"), submitted herewith, details the work performed for the benefit of the Securities Settlement Class since the commencement of this case in June 2002, including pre-filing and subsequent investigation, locating and interviewing potential witnesses, and participating in prolonged and at times highly contentious settlement negotiations.   Securities Lead Counsel spent considerable time and resources to develop a case that he believes would have ultimately survived the pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  A description of the claims asserted by the Securities Lead Plaintiff, as well as the efforts expended by counsel for the Securities Lead Plaintiff, are set forth in the Lawrence Declaration.

The fee requested is more than fair and reasonable when considered under the applicable standards and, as discussed below, is below the normal range of awards made in contingent fee matters of this type, particularly in view of the result achieved and the considerable risks attendant in bringing and pursuing the Securities Action. This case involves complex issues, including proof of scienter, loss causation and

---

[1]    All capitalized terms not defined herein shall have the same meanings set forth in the Touch America Securities Stipulation of Settlement dated as of November 13, 2009 and the Amendment to Touch America Securities Stipulation of Settlement dated December 4, 2009 (together, the "Securities Settlement").

damages, a bankrupt company and multiple related litigations. The legal and factual issues presented a significant risk that counsel for the Securities Lead Plaintiff would spend many more years at sizable cost and would not obtain a better recovery (or any recovery at all) for the Securities Settlement Class.

For the reasons set forth herein, and in the Lawrence Declaration, it is respectfully submitted that the requested attorneys' fees and expenses are fair and reasonable under the applicable legal standards and, in light of the significant risks faced and the remarkable result achieved, should be awarded by this Court.

## II.  FACTUAL AND PROCEDURAL HISTORY OF THE SECURITIES ACTION

The Lawrence Declaration is an integral part of this submission. The Court is respectfully referred to it for a description of the factual and procedural history of the Securities Action, the claims asserted, the investigation and informal discovery undertaken, the extensive settlement negotiations, as well as the numerous risks and uncertainties presented in the Securities Action.

## III.  AWARD OF ATTORNEYS' FEES

### A.  The Legal Standards Governing the Award of Attorneys' Fees in Common Fund Cases Support the Requested Award

#### 1.  A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

For their efforts in creating a common fund for the benefit of the Securities Settlement Class, Securities Lead Counsel seeks a reasonable percentage of the fund recovered as attorneys' fees. The percentage method of awarding fees has become an accepted, if not the prevailing method, for awarding fees in common fund cases in this Circuit and throughout the United States.

It has long been recognized in equity that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including

attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this doctrine is to avoid unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*"). This rule, known as the common fund doctrine, is firmly rooted in American case law. *See, e.g.*, *Trustees v. Greenough*, 105 U.S. 527 (1882); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885).[2]

In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed on the class." In this Circuit, the district court has discretion to award fees in common fund cases based on either the so-called lodestar/multiplier method or the percentage-of-the-fund method. *WPPSS*, 19 F.3d at 1296. In *Paul, Johnson*, 886 F.2d 268, *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990), *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993), and *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002), the Ninth Circuit expressly approved the use of the percentage method in common fund cases. Moreover, supporting authority for the percentage method in other circuits is overwhelming.[3]

---

[2]     In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989), the Ninth Circuit explained the principle underlying fee awards in common fund cases:

> Since the Supreme Court's 1885 decision in [*Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885)], it is well settled that the lawyer who creates a common fund is allowed an ***extra*** reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. The amount of such a reward is that which is deemed "reasonable" under the circumstances.

*Id.* at 271 (citations omitted, emphasis in original).

[3]     Courts in other circuits favor the percentage-of-recovery approach for the award of attorneys' fees in common fund cases. Two circuits have ruled that the ***percentage method is mandatory in common fund cases***. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d

Since *Paul, Johnson* and its progeny, district courts in this Circuit have almost uniformly shifted to the percentage method in awarding fees in representative actions. The rationale for compensating counsel in common fund cases on a percentage basis is sound. First, it is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated by a percentage of the recovery.[4] Second, it more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time.[5] Indeed, one of the nation's leading scholars in the field of

---

1261 (D.C. Cir. 1993); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991). Other circuits have expressly approved the use of the percentage method. *See, e.g., Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991).

[4]     Courts are encouraged to look to the private marketplace in setting a percentage fee:

> The judicial task might be simplified if the judge and the lawyers [spent] their efforts on finding out what the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character. This was a contingent fee suit that yielded a recovery for the "clients" (the class members) of $45 million. The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client. Suppose a large investor had sued Continental for securities fraud, and won $45 million. What would its lawyers have gotten pursuant to their contingent fee contract?

*In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992).

[5]     In *Kirchoff v. Flynn*, 786 F.2d 320, 325, 326 (7th Cir. 1986), the court stated:

> The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains. . . . The unscrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a payment for more hours. Contingent fees eliminate this incentive and also ensure a reasonable proportion between the recovery and the fees assessed to defendants. . . .

> At the same time as it automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation.

class actions and attorneys' fees, Professor Charles Silver of the University of Texas
School of Law, has concluded that the percentage method of awarding fees is the only
method of fee awards that is consistent with class members' due process rights.
Professor Silver notes:

> **The consensus that the contingent percentage approach creates
> a closer harmony of interests between class counsel and absent
> plaintiffs than the lodestar method is strikingly broad.** It includes
> leading academics, researchers at the RAND Institute for Civil Justice,
> and many judges, including those who contributed to the Manual for
> Complex Litigation, the Report of the Federal Courts Study Committee,
> and the report of the Third Circuit Task Force. Indeed, it is difficult to
> find anyone who contends otherwise. No one writing in the field today
> is defending the lodestar on the ground that it minimizes conflicts
> between class counsel and absent claimants.
>
> **In view of this, it is as clear as it possibly can be that judges
> should not apply the lodestar method in common fund class actions.**
> The Due Process Clause requires them to minimize conflicts between
> absent claimants and their representatives. The contingent percentage
> approach accomplishes this.

Charles Silver, *CLASS ACTIONS IN THE GULF SOUTH SYMPOSIUM: Due Process
and the Lodestar Method: You Can't Get There from Here*, 74 Tul. L. Rev. 1809,
1819-20 (June 2000) (emphasis added, footnotes omitted). This is particularly
appropriate in PSLRA cases where Congress recognized the propriety of the
percentage method of fee awards.[6]

### 2. A Fee of Approximately 16% of the Fund Created Is Very Reasonable

In *Paul, Johnson*, the Ninth Circuit established 25% of the fund as the
"benchmark" award for attorneys' fees. 886 F.2d at 273; *see also Torrisi*, 8 F.3d at
1376 (reaffirming 25% benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir.
2000) (same). The guiding principle in this Circuit is that a fee award be "'reasonable

---

[6]   "Total attorneys' fees and expenses awarded by the court to counsel for the
plaintiff class shall not exceed a reasonable percentage of the amount of any damages
and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6).

under the circumstances.'" *WPPSS*, 19 F.3d at 1296 (citation and emphasis omitted).

In view of the result obtained, the contingent fee risk and the financial commitment of counsel for the Securities Lead Plaintiff, the requested award of a fee of almost 16% of the recovery obtained for the Securities Settlement Class is appropriate.

**B.    Consideration of the Relevant Factors Used by Courts in the Ninth Circuit Justifies the Requested Fee**

Securities Lead Counsel submits that, as the factors discussed below demonstrate, attorneys' fees of approximately 16% of the fund recovered for the Securities Settlement Class are very reasonable under the circumstances of this case and should be approved.

**1.    The Result Achieved**

Courts have consistently recognized that the result achieved is an important factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

A settlement fund of $19 million has been obtained through the efforts of counsel for the Securities Lead Plaintiff without the necessity and risk of formal discovery, summary judgment, trial, and appeals.   The Securities Settlement represents approximately 10% of Securities Lead Plaintiff's estimate of maximum potential damages, even though actual provable damages could have been a small fraction of these potential amounts had the case moved forward through discovery, summary judgment, and trial.  Securities Lead Counsel's pursuit of Securities Lead Plaintiff's claims has resulted in a certain recovery for the Securities Settlement Class.

The notable nature of this settlement is supported by a review of recoveries in other complex class action settlements. In contrast to the present recovery, a study by

513627_1

National Economic Research Associates ("NERA") states that in 2008, the median ratio of settlement value to investor losses was 2.7%. *See* Stephanie Plancich, Ph.D., Svetlana Starykh, *2008 Trends in Securities Class Actions*, at 14 (NERA Dec. 2008), attached as Exhibit 1 to the accompanying Declaration of Joy Ann Bull in Support of Securities Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses ("Bull Decl."). When measured against the results in comparable cases, Securities Lead Counsel achieved a very good recovery for Securities Settlement Class Members.

Given the above, there is no doubt that counsel for the Securities Lead Plaintiff achieved a superior recovery for Securities Settlement Class Members and should be awarded the $3 million fee requested to compensate them for such a favorable result.

## 2.     The Risks of Litigation

Numerous cases have recognized that risk is an important factor in determining a fair fee award. *See, e.g.*, *WPPSS*, 19 F.3d at 1299-1301. Uncertainty that an ultimate recovery would be obtained is highly relevant in determining risk. *Id.* at 1300; *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976). As the court aptly observed in *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 632, 636-37 (D. Colo. 1976):

> The litigation also involved unique and substantial issues of law in the technical area of SEC Rule 10b-5, . . . difficult, complex and oft-disputed class action questions, and difficult questions regarding computation of damages.
>
> \* \* \*
>
> In evaluating the services rendered in this case, appropriate consideration must be given to the risks assumed by plaintiffs' counsel in undertaking the litigation. The prospects of success were by no means certain at the outset, and indeed, the chances of success were highly speculative and problematical.

*See also In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, at *44 (C.D. Cal. June 10, 2005) ("The risks

513627_1

assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").

As set forth in the Lawrence Declaration, substantial risks and uncertainties were present from the outset of the Securities Action that made it far from certain that any recovery for the Securities Settlement Class would be obtained. While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery (and hence no fee) has increased exponentially. Courts have noted that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). According to an April 2006 NERA study, dismissal rates have doubled since the PSLRA, accounting for 40.3% of dispositions. *See* Ronald I. Miller, Ph.D., Todd Foster, Elaine Buckberg, Ph.D., *Recent Trends in Shareholder Class Action Litigation: Beyond the Mega-Settlements, is Stabilization Ahead?* at 4 (NERA Apr. 2006), Bull Decl., Ex. 2.

When cases are dismissed, the result is large losses for the plaintiffs' firms involved. There is no question that, if not settled, counsel for the Securities Lead Plaintiff faced the substantial risk of years of litigation with no guarantee of any compensation. Securities Lead Counsel achieved a significant recovery for the Securities Settlement Class in the face of these very substantial risks. Under the circumstances, the requested fee is fully justified.

### 3.   The Skill Required and the Quality of the Work

The successful prosecution of these complex claims required the participation of highly skilled and specialized attorneys. *Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *38 ("The experience of counsel is also a factor in determining the appropriate fee award."). From the outset, Securities Lead Counsel engaged in a concerted effort to obtain the maximum recovery for the Securities Settlement Class, demonstrating that, notwithstanding the barriers erected by the PSLRA, he would

- 8 -

work to develop sufficient evidence to support a convincing case. As a result, Securities Lead Counsel was able to negotiate a settlement he believes is fair under all the circumstances. The skill demonstrated by Securities Lead Counsel supports the requested fee. *See, e.g., J.N. Futia Co. v. Phelps Dodge Indus., Inc.*, No. 78 Civ. 4547, 1982 U.S. Dist. LEXIS 15261 (S.D.N.Y. Sept. 17, 1982).

The quality of opposing counsel is also important in evaluating the quality of the work done by plaintiffs' counsel. *See, e.g., In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *King Res.*, 420 F. Supp. at 634; *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974). Securities Lead Plaintiff was opposed in this case by counsel from a law firm with a nationwide reputation for vigorous advocacy of its clients' interests.

### 4.   The Novelty and Difficulty of the Questions Presented

Courts have recognized that the novelty and difficulty of the issues in a case are significant factors to be considered in making a fee award. *See, e.g., Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1306 (W.D. Wash. 2001). Moreover, courts have properly recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *Ikon*, 194 F.R.D. at 194; *see also Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with prejudice of securities fraud class action complaint against Bernard Ebbers and WorldCom arising out of a massive securities fraud that resulted in a $685 million write-off of accounts receivable, for which Ebbers was later convicted).

In addition to being factually complex, this case also involved numerous complex questions of law under the PSLRA, in particular the application of *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) to the facts of this case. The application of *Dura* and subsequent cases that interpret it posed significant risks to Securities Lead Plaintiff's ability to prevail on the issue of loss causation, if the case continued.

513627_1

5.     **The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel**

A determination of a fair fee must include consideration of the contingent nature of the fee.  It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.  *See* Richard Posner, *Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the market value of the services rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose. *WPPSS*, 19 F.3d at 1299.

Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees.  For example, in awarding counsel's attorneys' fees in *Prudential*, the court noted the risks that plaintiffs' counsel had taken:

> Although today it might appear that risk was not great based on Prudential Securities' global settlement with the Securities and Exchange Commission, such was not the case when the action was commenced and throughout most of the litigation.  Counsel's contingent fee risk is an important factor in determining the fee award.  Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable.  Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394, at *6 (E.D. La. May 18, 1994).

Before plaintiffs' counsel commit to prosecute a securities class action on a contingent fee basis, an assessment of the strength of the case, the likelihood of a recovery, the probable size of damages, and the costs of litigating the case is weighed against the expectation of payment if successful.  In this Circuit, plaintiffs' counsel expect to be paid a reasonable percentage of any recovery, usually in the range of 25%

(absent a fee agreement with the client to seek a different amount). Counsel's expectation about the likely fee, if successful, is part of the equation when determining whether to pursue a case.

Moreover, there are numerous class actions in which plaintiffs' counsel took the risk, expended thousands of hours, and yet received no remuneration whatsoever despite their diligence and expertise. Subsequent to the passage of the PSLRA, a high percentage of cases in this Circuit have been dismissed at the pleading stage in response to defendants' arguments that the complaints do not meet the PSLRA's pleading standards.

Indeed, because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result and that such result would only be realized after significant amounts of time, effort, and expense had been expended. Counsel for the Securities Lead Plaintiff have received no compensation for their efforts during the course of the Securities Action. Absent this settlement, there was a sizeable risk that at the end of the day, Securities Settlement Class Members, as well as their counsel, would obtain no recovery. Counsel for the Securities Lead Plaintiff have risked non-payment of $349,076.74 in expenses and approximately $1.79 million in time worked on this matter, knowing that if their efforts were not successful, no fee would be paid. *See, e.g.*, *Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y.) (granting defendants' motion for judgment as a matter of law after jury verdict for plaintiffs), *aff'd sub nom. Winkler v. Wigley*, 242 F.3d 369 (2d Cir. 2000).

### 6.   The Fee Requested Is Below the Average Fee Awarded in Similar Complex Class Action Litigation

A Federal Judiciary Center study released in 1996, which covered all class actions in four selected federal district courts with a high number of class actions found that as to the size of attorneys' fees: "Median rates ranged from 27% to 30%."

Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*, at 69 (Federal Judicial Center 1996), Bull Decl., Ex. 3. This finding is in line with an analysis of fee awards in class actions conducted in 1996 by NERA, an economics consulting firm. Using data from 433 shareholder class actions, the study concludes: "Regardless of case size, fees average approximately 32 percent of the settlement." Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* at 12-13 (NERA Nov. 1996), Bull Decl., Ex. 4. The fee requested here is significantly less than the average paid in these shareholder class actions.

Further, the fee requested is less than most of the reported fee awards in other class action cases in this Circuit. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) (upheld fee award of 33.3% of settlement); *Vizcaino*, 290 F.3d at 1047 (affirming 28% fee award); *Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *61 (awarding one-third of $27.75 million settlement); *Torrisi*, 8 F.3d at 1379 (affirming 25% fee award). The fees paid in these comparable cases support the fee award requested here.

### 7.    The Customary Fee

Circuit courts and scholars have encouraged the "mimic the market" approach in setting fees in common fund class action cases. *See Cont'l Ill.*, 962 F.2d at 568 ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order."); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."); *In re Synthroid Mktg. Litig.*,

325 F.3d 974, 975 (7th Cir. 2003) ("A court must give counsel the market rate for legal services.").

Courts often look at fees awarded in comparable cases to determine if the fee requested is reasonable. *Vizcaino*, 290 F.3d at 1050 n.4. If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *Blum*, 465 U.S. at 903*; *Ikon*, 194 F.R.D. at 194. The customary contingent fee in the private marketplace – 30% to 40% of the fund recovered – is much higher than the percentage fee requested in this case.[7]

Thus, the customary fee in contingent litigation supports the requested fee as fair and reasonable.

### 8.   Reaction of the Securities Settlement Class Supports Approval of the Attorneys' Fee Requested

The Court-approved notice was sent to over 52,000 potential Securities Settlement Class Members and the Court-approved published notice was published in *Investor's Business Daily* and eight Montana newspapers. *See* paragraphs 3-10 and 13 to the accompanying Declaration of Carole K. Sylvester Re A) Mailing of the Montana Power Settlements Cover Letter; B) Mailing of the Notice of Pendency and

---

[7]    Professor Conte acknowledged the propriety of adequately compensating counsel based on the result obtained in common fund cases:

> [C]ourts have been careful to award a fully compensable reasonable fee based on the underlying economic inducement for class action lawyers to pursue potentially expensive or complex common fund class litigation. These lawyers assume the risk of no compensation unless they successfully confer common fund benefits on the class, based on their reasonable expectation that they will share in the recovery in a fair proportion, in contrast to receiving a fee based initially on time-expended criteria that fail to give the ***results obtained*** factor primary consideration.

1 Alba Conte, *Attorney Fee Awards* §1.09, at 16 (2d ed. 1993) (emphasis in original).

Proposed Settlement of Touch America Securities Action; C) Notice of the Montana Power Class Action Settlement; D) the Proof of Claim and Release Form; and E) Publication of the Published Notice.  To date, no objections to the requested amount of attorneys' fees and expenses have been received.[8]  The Third Circuit recently noted that a low level of objections is a "rare phenomenon." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005).  Moreover, as this Circuit has held, a small number of objections do not stand in the way of approval of a reasonable fee. *See Mego Fin.*, 213 F.3d at 459; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

## IV.   THE REQUESTED FEE IS REASONABLE UNDER A LODESTAR CROSS-CHECK

In order to apply a lodestar cross-check, the court needs to ascertain the lodestar figure by multiplying the number of hours worked by the hourly rate of counsel.  The court then can determine an implied multiplier that may be assessed for reasonableness by taking into account the contingent nature and risks of the litigation, the results obtained, and the nature of and quality of the services rendered by plaintiffs' counsel. *See, e.g., Hensley*, 461 U.S. 424.  Indeed, "'courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.'" *Vizcaino*, 290 F.3d at 1051 (citation omitted).

Here, counsel request a fee of $3 million.  The cumulative hours expended by counsel for the Securities Lead Plaintiff in the Securities Action are 3,931.85 and the resulting lodestar for the services performed is $1,792,010.00.[9]  Thus, the requested fee represents a modest multiplier of 1.67 of counsel's lodestar.

---

[8]   The last day to file an objection is April 30, 2010.  If any objections are received, Securities Lead Counsel will address them in a reply brief.

[9]   *See* the declarations of counsel for the Securities Lead Plaintiff, submitted herewith.

In other complex litigation, it is common for courts to enhance the lodestar by multipliers between 3.0 and 4.5 and many courts have awarded even higher multipliers. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 (finding multipliers ranged as high as 19.6, though most run from 1.0 to 4.0); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) ("'In recent years multipliers of between 3 and 4.5 have been common' in federal securities cases.") (citation omitted); *Rabin v. Concord Assets Group*, No. 89 CIV 6130 (LBS), 1991 U.S. Dist. LEXIS 18273, at *4 (S.D.N.Y. Dec. 19, 1991) (multipliers between 3 and 4.5 have been common in recent years); *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 998-99 (D. Minn. 2005) (awarding 25% of $80 million settlement fund, representing 4.7 multiplier); *In re Charter Commc'ns, Inc., Sec. Litig.*, No. MDL 1506, 2005 U.S. Dist. LEXIS 14772, at *56 (E.D. Mo. June 30, 2005) (awarding 20% of $146 million settlement fund, representing 5.6 multiplier); *In re Rite Aid Corp. Sec. Litig.*, 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003) (awarding fee equal to multiplier of 4.07 and recognizing that "'multipliers in this range are fairly common'") (citation omitted), *vacated on other grounds*, 396 F.3d 294 (3d Cir. 2005); *In re Aetna Inc. Sec. Litig.*, No. MDL 1219, 2001 U.S. Dist. LEXIS 68, at *59 (E.D. Pa. Jan. 4, 2001) (awarding 30% of $82.5 million settlement fund, representing 3.6 multiplier); *In re Buspirone Antitrust Litig.*, No. MDL 1413 (JGK), 2003 U.S. Dist. LEXIS 26538, at *11 (S.D.N.Y. Apr. 17, 2003) (awarding multiplier of 8.46); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (awarding multiplier of 5.5); *Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (awarding fee equal to multiplier of 9.3); *In re RJR Nabisco, Inc. Sec. Litig.*, No. MDL 818 (MBM), 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) (awarding fee equal to multiplier of 6.0).  *See also In re Shell Oil Refinery*, 155 F.R.D. 552, 573-74 (E.D. La. 1993) (multiplier of 3.25); *Keith v. Volpe*, 501 F. Supp. 403, 414 (C.D. Cal. 1980) (multiplier of 3.5); *Brewer v. S. Union Co.*, 607 F. Supp. 1511 (D. Colo. 1984) (multipliers of 3 and 3.5); *Mun. Auth.*

*of Bloomsburg v. Pennsylvania*, 527 F. Supp. 982, 999-1000 (M.D. Pa. 1981) (4.5 multiplier); *In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322, 326-28 (N.D. Ill. 1981) (4 multiplier).  Consequently, the attorneys' fees sought are plainly reasonable using a lodestar cross-check.

## V.   COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Counsel for the Securities Lead Plaintiff have incurred expenses in an aggregate amount of $349,076.74 in prosecuting the Securities Action for the benefit of the Securities Settlement Class.  These expenses are set forth in the declarations of counsel submitted to the Court herewith.

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted).  *See also In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996).  Therefore, it is proper to reimburse reasonable expenses even though they are greater than taxable costs.  *Id.*  *See also Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th Cir. 1993) (expenses reimbursable if they would normally be billed to client); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable if customary to bill clients for them); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (citation omitted).  The categories of expenses for which counsel seek reimbursement are the type of

- 16 -

expenses routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund.

For example, expenses include the costs of computerized research. These are the charges for computerized factual and legal research services such as LEXIS/Nexis and Westlaw. It is standard practice for attorneys to use LEXIS/Nexis and Westlaw to assist them in researching legal and factual issues and reimbursement is proper. *See Media Vision*, 913 F. Supp. at 1371. Indeed, courts recognize that these tools create efficiencies in litigation and, ultimately, save clients and the class money. *See Cont'l Ill.*, 962 F.2d at 570. In approving expenses for computerized research, the court in *Gottlieb v. Wiles*, 150 F.R.D. 174, 186 (D. Colo. 1993), *rev'd on other grounds sub nom. Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994), underscored the time-saving attributes of computerized research as a reason reimbursement should be encouraged. The court also noted that fee-paying clients reimburse counsel for computerized legal and factual research. *Id.*

In addition, counsel were required to travel in connection with this case. The expenses in this category are reasonable in amount, and are properly charged against the fund created. *See Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982), *vacated on other grounds*, 461 U.S. 952 (1983); *In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 842 F. Supp. 733, 746 (S.D.N.Y. 1994); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 741 F. Supp. 84, 86 (S.D.N.Y. 1990).

Photocopying costs are also customarily reimbursed in common fund cases. *See McDonnell Douglas*, 842 F. Supp. at 746. Duplication of documents and pleadings was necessary for the effective prosecution of this case.

## VI.   CONCLUSION

From the beginning, the Securities Lead Plaintiff was faced with determined adversaries represented by experienced counsel. Without any assurance of success, the Securities Lead Plaintiff and his counsel pursued the Securities Action to a

successful conclusion.   Accordingly, for the reasons set forth above and in the Lawrence Declaration, the Court should award counsel for the Securities Lead Plaintiff attorneys' fees of $3,000,000, which is approximately 16% of the TA Securities Settlement Fund, and reimbursement of $349,076.74 in expenses.

DATED:  April 6, 2010                     Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JOY ANN BULL


_____s/ Joy Ann Bull_____
JOY ANN BULL

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
JEFFREY W. LAWRENCE
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

BEERS LAW OFFICES
THOMAS J. BEERS


_____s/ Thomas J. Beers_____
THOMAS J. BEERS

P.O. Box 7968
234 E. Pine Street
Missoula, MT  59802
Telephone:  406/728-4888
406/728-8445 (fax)

Attorneys for Lead Plaintiff Vogt

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this memorandum complies with Local Rule 7.1(d)(2), as it contains 5,773 words prepared using Microsoft Office Word 2003, which is less than the 6,500 word limitation.

DATED:  April 6, 2010

s/ Joy Ann Bull
_____
JOY ANN BULL

513627_1

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 6, 2010.

s/ Joy Ann Bull
JOY ANN BULL

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:      joyb@rgrdlaw.com

513627_1

# Mailing Information for a Case 2:02-cv-00057-SEH

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Thomas J. Beers**
  blo@montana.com,layneblo@montana.com

- **Alan F. Blakley**
  mjones@montana.com

- **Joy Ann Bull**
  joyb@csgrr.com

- **James E. Burns , Jr**
  jburns@orrick.com

- **Patrick T. Fleming**
  ptf_folaw@qwest.net

- **Robert F. James**
  rfj@uazh.com,rkj@uazh.com,sjw@uazh.com

- **Stephen M. Knaster**
  sknaster@orrick.com

- **Jeffrey W. Lawrence**
  JeffreyL@csgrr.com,jdecena@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Sander Bak
MILBANK TWEED HADLEY & McCLOY
One Chase Manhattan Plaza
New York, NY 10005-1413

Rolin P. Bissell
YOUNG CONAWAY STARGATT & TAYLOR
PO Box 391
Wilmington, DE 19899-0391

Scott Edelman
MILBANK TWEED HADLEY & McCLOY
One Chase Manhattan Plaza
New York, NY 10005-1413

Lori G. Feldman
```

MILBERG WEISS BERSHAD & SCHULMAN
1001 Fourth Ave
Suite 2550
Seattle, WA 98154

**Danielle Gibbs**
YOUNG CONAWAY STARGATT & TAYLOR
PO Box 391
Wilmington, DE 19899-0391

**Jeffrey M. Haber**
BERNSTEIN LIEBHARD & LIFSHITZ
10 East 40th Street
New York, NY 10016

**Maria V. Morris**
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS
100 Pine Street
Suite 2600
San Francisco, CA 94111

**Samuel H. Rudman**
MILBERG WEISS BERSHAD & SCHULMAN
One Pennsylvania Plaza
49th Floor
New York, NY 10119

**Steven G. Schulman**
MILBERG WEISS BERSHAD & SCHULMAN
One Pennsylvania Plaza
49th Floor
New York, NY 10119

**Joseph R. Seidman**                                                    **, Jr**
BERNSTEIN LIEBHARD & LIFSHITZ
10 East 40th Street
New York, NY 10016